UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| **Linda Knight** | ) | **COMPLAINT** |
| | ) | _____ |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **NCO Financial Systems, Inc.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1.  This is an action brought by the Plaintiff, Linda Knight, for actual and statutory damages, attorneys' fees, and costs for NCO Financial Systems, Inc.'s violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (hereinafter "FDCPA"), the Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. (hereinafter "TCPA"), and the Defendant's violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq*. (hereinafter "EFTA"). The Plaintiff also seeks compensatory and punitive damages for the Defendant's violations of South Carolina common law set forth herein.

## JURISDICTION AND VENUE

2.  This Court has Jurisdiction under 15 U.S.C. §1692k (d), and 28 U.S.C. §1331, §1332, and §1367.

3.  Venue is proper in the Florence Division because the Plaintiff resides in Marion County and the Defendant transacted business in this division.

## PARTIES

4. The Plaintiff, Linda Knight, is a resident and citizen of the State of South Carolina, Marion County, and is over the age of twenty-one (21) years.

5. The Defendant, NCO Financial Systems, Inc. ("NCO") is a Pennsylvania Corporation that is licensed to do business in South Carolina. NCO can be served with process through its registered agent, C T Corporation System, 2 Office Park Court, Suite 103, Columbia, SC 29223. The Defendant, was in all respects and at all times relevant herein, doing business in the state of South Carolina and in this Division. The Defendant is engaged in the business of collecting consumer debts from consumers residing in Marion, South Carolina and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

6. Beginning around February of 2010 and continuing through the date of the filing of this Complaint, the Defendant has been repeatedly calling the Plaintiff on her cell phone in an attempt to collect a consumer debt allegedly owed by the Plaintiff.

7. Defendant has called the Plaintiff a minimum of three to four times a day. The Defendant continually left messages on the Plaintiff's cell phone. These messages stated that the calls were from NCO, a debt collector, and that the Plaintiff should call back immediately. These messages were heard by the Plaintiff's minor children.

8. Defendant NCO's calls made to the Plaintiff's cell phone harassed, annoyed, and intimidated the Plaintiff. The Plaintiff was also forced to use her cell phone minutes

when taking the Defendant's multiple calls.

9. From about February of 2010 to April of 2010, the Defendant called the Plaintiff at least three to four times a day, five days a week.

10. The Plaintiff spoke with the Defendant at least 12 times from February 2010 to April 2010. The Defendant indicated that the Plaintiff had to pay $500.00 or the Defendant would institute legal action.

11. After learning that the Plaintiff could not pay $500.00, the Defendant stated that the Plaintiff would have to pay $250.00 per month for 6 months.

12. Beginning in May, 2010, the Plaintiff began to make payments of $250.00 per month with the assistance of her parents. Even after receiving these payments, the Defendant continued to call at least one time per week.

13. In October of 2010, after making 6 $250.00 payments, the Plaintiff indicated that she would no longer be able to make the $250.00 payment and that no further payments would be made. The Defendant indicated that the Plaintiff needed a new agreement and that the minimum payments were going to go up. The Plaintiff indicated she could not make any payments due to having no money.

14. After speaking with the Defendant, the Plaintiff received three calls within a week.

15. On 11/1/2010, the Plaintiff received an overdraft notice from her bank. This notice indicated that the Defendant had taken $250.00 out of the Plaintiff's account. The Plaintiff never gave the Defendant permission or authorization to draw funds from her bank account.

16. The Defendant's impermissible withdrawal of the Plaintiff's funds caused the Plaintiff's other checks to bounce and caused the Plaintiff to incur bad check fees.

17. The Defendant made a second $250.00 withdrawal from the Plaintiff's bank account on 11/15/2010. The Plaintiff did not agree to this withdrawal and the Defendant had no authorization to take these funds.

18. On or about November 15, 2010, the Defendant called the Plaintiff and stated that they would no longer accept payments and that the Plaintiff was required to come up with $16,000. The Plaintiff indicated to the Defendant that this was impossible. That same day, the Defendant's representative, Kal, made a second call to the Plaintiff and offered to settle the debt for $11,000. The Plaintiff asked Kal why the Defendant had automatically taken money out of her account on two separate occasions. Kal stated that the Defendant had taken the $500.00 because the Plaintiff had not responded to their calls and that the Plaintiff not responding "gave the Defendant a legal right to the money." Kal also stated that the Defendant had taken $500.00 out of the Plaintiff's account "because the Plaintiff's failure to respond to the Defendant's calls had caused her payment to go up."

19. On or about November 16, 2009, Kal called the Plaintiff again. Kal stated that the Defendant required a payment of the $11,000 by Friday or they would initiate legal action. Kal gave the Plaintiff until 4:30 p.m. that afternoon to call back.

20. The Plaintiff called Kal back and stated her parents were going to try to cash in a CD to get $8,000. Kal then transferred the Plaintiff to a supervisor who stated that

Plaintiff had to deposit the $8,000 by Friday and that the Defendant would give the Plaintiff until December 1, 2010 to get the remaining $3,000.

21. On or about November 22, 2010, Kal called the Plaintiff and left a message telling the Plaintiff to make sure that the $8,000 was in her account. The Plaintiff immediately returned the Defendant's call and informed them that the funds were not there and that she was not going to be able to pay.

22. After receiving the Plaintiff's call, Kal made a second call to the Plaintiff on November 22.

23. After the second November 22 call, the Defendant NCO's representative, Linda, made a third call to the Plaintiff.

24. After the third November 22 call, Kal again called the Plaintiff. The Plaintiff told Kal that she was unemployed and unable to continue to make payments and requested that the Defendant stop calling her.

25. After the fourth November 22 call, Linda called the Plaintiff.

26. After the fifth November 22 call, the Defendant called the Plaintiff again.

27. After the sixth November 22 call, Linda called the Plaintiff once more and left a message on the Plaintiff's voicemail stating that the Defendant had a recording where the Plaintiff stated that the $8,000 would be available today and that since payment had not been made, the Defendant was going to file fraud charges against the Plaintiff. This was the seventh call received on November 22, 2010.

28. After the Plaintiff requested that the Defendant stop calling, the Defendant continued

to make daily calls to the Plaintiff.

29. On or about December 3, 2010, the Defendant left two messages on the Plaintiff's cell phone in an attempt to collect on a debt.

30. On or about December 6, 2010, the Defendant left three messages on the Plaintiff's cell phone in an attempt to collect a debt.

31. On or about December 8, 2010, the Defendant made at least four calls to the Plaintiff and left two messages regarding collection of a debt.

32. On or about December 9, 2010, the Defendant left three messages on the Plaintiff's cell phone in an attempt to collect a debt.

33. On or about December 10, 2010, the Defendant made at least two calls to the Plaintiff's cell phone and left one message on her cell phone in an attempt to collect a debt.

34. On or about Saturday, December 11, 2010, the Defendant left a message on the Plaintiff's cell phone in an attempt to collect a debt.

35. On or about December 13, 2010, the Defendant left two messages on the Plaintiff's cell phone in an attempt to collect a debt.

36. On or about December 14, 2010, the Defendant left a message on the Plaintiff's cell phone in an attempt to collect a debt.

37. On or about December 21, 2010, the Defendant left a message on the Plaintiff's cell phone in an attempt to collect a debt.

38. On or about December 28, 2010, the Defendant left a message on the Plaintiff's cell

phone in an attempt to collect a debt.

39. On or about December 29, 2010, the Defendant left a message on the Plaintiff's cell phone in an attempt to collect a debt.

40. On or about January 3, 2011, the Defendant left a message on the Plaintiff's cell phone in an attempt to collect a debt.

41. One message received by the Plaintiff was from the Defendant's representative Kal. During this message, Kal stated that the Plaintiff needed to pay the debt and that it would cost her at least two to five thousand dollars to hire a lawyer and avoid jail.

42. Upon information and belief, at least seven of the messages left on the Plaintiff's cell phone were made by an auto-dialer, as defined by 47 U.S.C. §227(a)(1), used by the Defendant.

43. The Defendant repeatedly called the Plaintiff on a number that was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. §227(b)(1).

44. Plaintiff did not expressly consent to Defendant's placement of telephone calls to his cellular telephone by the use of an automatic telephone dialing system pursuant to 47 U.S.C. §227(b)(1)(A).

45. None of Defendant's telephone calls placed to Plaintiff were for emergency purposes as defined by 47 U.S.C. §227 (b)(1)(A)(I).

46. The telephone calls made by Defendant were in violation of 47 U.S.C. §227(b)(1).

## COUNT ONE
## FAIR DEBT COLLECTIONS PRACTICES ACT

47. The Plaintiff adopts the averments and allegations of paragraphs 6 through 46 hereinbefore as if fully set forth herein.

48. The Defendant has engaged in collection activities and practices in violation of the FDCPA with respect to the Plaintiff's alleged consumer debt.

49. The Defendant violated §1692c(a)(1) by repeatedly contacting the Plaintiff at a time or place Defendant knew or should have known was inconvenient to the Plaintiff.

50. The Defendant violated §1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff by repeatedly telephoning the Plaintiff with the intent to annoy, abuse, or harass the Plaintiff in an effort to coerce them into paying a debt in violation of §1692d(5).

51. The Defendant violated §1692e by representing to the Plaintiff that an arrest was possible for any failure to pay the debt in violation of §1692e(4).

52. The Defendant violated §1692d by engaging in conduct the natural consequence of which was to harass, oppress, or abuse the Plaintiff by threatening harm to the Plaintiff in violation of §1692d(1) and by using language the natural consequence of which is to abuse the hearer in violation of §1692d(2).

53. The Defendant violated §1692e by making false and misleading representations to the Plaintiff. At the time the Defendant made these representations to the Plaintiff, the Defendant knew, or should have known, that said representations were false. Said representations made by the Defendant were made recklessly, willfully, and/or

intentionally.

54. The Defendant falsely represented or implied that nonpayment of the $8000 payment would result in the arrest or imprisonment of the Plaintiff or the seizure, garnishment, attachment, or sale of any property or wages of the Plaintiff when such action was not lawful and/or the Defendant did not intend to take such action in violation of §1692e(4).

55. The Defendant threatened to take action that could not legally be taken or which they did not intend to take in violation of §1692e(5).

56. The Defendant falsely represented or implied that the Plaintiff committed a crime or other conduct in order to disgrace the Plaintiff in violation of §1692e(7).

57. The Defendant used false representations and/or deceptive means to collect or attempt to collect a debt or obtain information concerning the Plaintiff in violation of §1692e(10).

58. The Defendant violated §1692f by using unfair and/or unconscionable means to attempt to collect a debt.

59. As a proximate result of the Defendant's actions, the Plaintiff was caused to suffer actual damages, worry, humiliation, fear, frustration, loss of peace and quiet, loss of sleep, anxiety, nervousness, family discord, physical sickness, physical pain and mental anguish.

**COUNT TWO**
**ELECTRONIC FUNDS TRANSFER ACT**

60. The Plaintiff adopts the averments and allegations of paragraphs 6 through 59

hereinbefore as if fully set forth herein.

61. The Defendant never obtained written authorization from the Plaintiff at the time it withdrew funds electronically from the Plaintiff's bank account nor was any written authorization provided to the Plaintiff in violation of the Electronic Funds Transfer Act, 15 U.S.C. §1693 et. seq.

62. As a result of the Defendant's actions, the Plaintiff suffered damages including actual damages, consequential and statutory damages.

## COUNT THREE
## NEGLIGENT TRAINING AND SUPERVISION

63. The Plaintiff adopts the averments and allegations of paragraphs 6 through 62 hereinbefore as if fully set forth herein.

64. Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

65. Defendant knew or should have known that said conduct was improper and in violation of the FDCPA, the EFTA, and South Carolina state law.

66. Defendant negligently failed to train and supervise collectors in order to prevent said improper conduct.

67. Defendant negligently failed to train and supervise collectors on the FDCPA, the EFTA, and South Carolina law as it relates to communications with consumers.

68. As a result of Defendant's negligence, the Plaintiff suffered humiliation, worry, fear, loss of sleep, loss of peace and quiet, anxiety, nervousness, family discord, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT FOUR
## RECKLESS AND WANTON TRAINING AND SUPERVISION

69. The Plaintiff adopts the averments and allegations of paragraphs 6 through 68 hereinbefore as if fully set forth herein.

70. Defendant knew or should have known of the conduct set forth herein which was directed at and visited upon the Plaintiff.

71. Defendant knew or should have known that said conduct was improper and in violation of the FDCPA, the EFTA, and South Carolina state law.

72. Defendant recklessly and wantonly failed to train and supervise collectors in order to prevent said improper conduct.

73. Defendant recklessly and wantonly failed to train and supervise collectors on the FDCPA, the EFTA, and South Carolina law as it relates to communications with consumers.

74. As a result of Defendant's recklessness and wantonness, the Plaintiff suffered humiliation, worry, fear, loss of sleep, loss of peace and quiet, anxiety, nervousness, family discord, physical sickness, physical and mental suffering, pain, and anguish.

## COUNT FIVE
## SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT

75. The Plaintiff hereby adopts all of the allegations set forth in paragraphs 6 through 74 as if set forth fully herein.

76. The activities of the Defendant constitute "trade or commerce" as defined by South Carolina Code §39-5-10, *et. seq.* (As amended).

77. The actions of the Defendant described above constitute unfair and deceptive acts and practices in the conduct of trade and commerce, as prohibited by the South Carolina Unfair Trade Practices Act, §39-5-10 *et.seq.* and are knowing and willful violations thereof.

78. The Plaintiff further alleges that the actions of the Defendant have a real and substantial potential for repetition and are a threat to the public interest.

79. The Plaintiff has suffered an ascertainable loss, including but not limited to the loss of her cell phone minutes and bank charges incurred when the Defendant illegally withdrew funds from the Plaintiff's bank account, due to the unlawful actions of the Defendant and is entitled, under § 39-5-140, to recover actual damages in an amount to be proven at trial, treble of said actual damages for Defendant's knowing and willful behavior, and an award of reasonable attorney's fees and costs.

### COUNT SIX
### NEGLIGENT VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT

80. The Plaintiff adopts the averments and allegations of Paragraphs 6 through 79 hereinbefore as if fully set forth herein.

81. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

82. As a result of Defendant's negligent violations of 47 U.S.C. § 227 *et seq.*, the Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation,

pursuant to 47 U.S.C.§ 227(b)(3)(B).

## COUNT SEVEN
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE
## TELEPHONE CONSUMER PROTECTION ACT

83. The Plaintiff adopts the averments and allegations of Paragraphs 6 through 82 hereinbefore as if fully set forth herein.

84. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

85. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. §227 *et seq.*, the Plaintiff is entitled to treble damages, as provided by statute, up to $1,500.00, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. § 227(b)(3(c).

## COUNT 8
## CONVERSION

86. The Plaintiff adopts the averments and allegations of Paragraphs 6 through 85 hereinbefore as if fully set forth herein.

87. The Plaintiff has an interest in the contents of her bank account.

88. The Defendant converted the property to its own use by removing a total of $500.00 of the Plaintiff's property from the Plaintiff's bank account.

89. The Plaintiff did not provide the Defendant permission or authorization to remove anything from her bank account.

90. The money that is the subject of this conversion action is of a determinate sum.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendant as follows:

A.  Statutory damages of $1,000 from the Defendant for its violations of the FDCPA (15 U.S.C. §1692k);

B.  Actual damages for Defendant's violations of the FDCPA;

C.  Costs and reasonable attorney's fees from the Defendant pursuant to 15 U.S.C. §1692k;

D.  Compensatory and punitive damages against Defendant in an amount to be determined by a struck jury on Plaintiff's state law claims for damages due to the Defendant's Negligent Training and Supervision; Reckless and Wanton Training and Supervision, and Conversion;

E.  Actual, consequential, and statutory damages for the Defendant's violation of the EFTA;

F.  For relief in amounts or other appropriate relief as may be determined for the Plaintiff's actual damages, for the Plaintiff's actual damages to be trebled by the Court as it deems proper, and attorney's fees against Defendant for its violations of the South Carolina Unfair Trade Practices Act, Sections §39-5-10, et seq. of the South Carolina Code of Laws Annotated;

G..  Statutory damages from the Defendant for its violations of the TCPA;

H.  Treble damages from the Defendant for its knowing and/or willful violations

of 47 U.S.C. §227 *et seq.*; and

J.      For such other and further relief as the Court may deem just and proper.

/s/ Penny Hays Cauley
Penny Hays Cauley, Fed. ID No. 10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
549 West Evans Street, Suite E
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ Penny Hays Cauley
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
NCO Financial Systems, Inc.
c/o CT Corporation System, Registered Agent
2 Office Park Suite 103
Columbia, SC 29223